# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IVERA MEDICAL CORPORATION<br><br>                   Plaintiff,<br>vs.<br><br>CATHETER CONNECTIONS, INC.<br><br>                   Defendant. | Case No. 14-cv-1997-H-RBB<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS, STAY OR TRANSFER**<br><br>[Doc. No. 4] |

On August 26, 2014, Plaintiff Ivera Medical Corporation ("Ivera") filed a complaint against Catheter Connections, Inc. ("Catheter"). On September 3, 2014, Catheter filed a motion to dismiss, transfer, or stay the action. (Doc. No. 4.) On September 30, 2014, Ivera filed an opposition. (Doc. No. 6.) On October 7, 2014, Catheter filed its reply. (Doc. No. 7.)

The Court, pursuant to its discretion under Local Rule 7.1(d)(1), submits the motion on the parties' papers and vacates the hearing set for October 14, 2014. The Court grants the motion and dismisses the action.

## Background

Ivera is a California corporation with its principal place of business in Rancho Bernardo, California. (Doc. No. 1 at ¶1.) Catheter is a Delaware corporation with its

principal place of business in Salt Lake City, Utah. (Doc. No. 1 at ¶2.) The parties compete "in the manufacture and sale of disinfecting caps designed to prevent microbial contamination of intravenous (IV) catheters when the catheters are not in use." (Doc. No. 4-1 at 2.) Ivera's product is Curos Tips; Catheter's product is DualCap. (Doc. No. 1 at 4-5.)

In the present action, Ivera brings three causes of action for false advertising under 15 U.S.C. § 1125(a) (the "Lanham Act" claim), false advertising under California Business and Professions Code § 17500 et seq., and unfair competition under California Business and Professions Code § 17200 et seq. (Doc. No. 1.)

Catheter moves to dismiss this action based on the first to file rule, referencing two earlier-filed actions pending in the United States District Court for the District of Utah.[1] (Doc. No. 4.) Catheter represents that this case "concerns the same parties, same products, and the same alleged conduct that is at issue in the Utah Cases." (Id.) Catheter argues that "the claims in [the present case] are based on *allegations, defenses, and counterclaims* pled in the Utah cases–all regarding representations about the features and alleged defects of each party's product." (Id.)

## Discussion

**I.   The February 2014 Utah Case**[2]

On February 4, 2014, Catheter filed a complaint against Ivera in the Utah district court (the "February Utah Case") alleging, in relevant part, patent

---

[1] Catheter also moves to transfer venue to Utah or stay the action. (Doc. No. 4.) Because the Court dismisses the action based on the first to file rule, the Court does not consider whether the action should be transferred or stayed.

[2] Catheter also initiated an earlier case in Utah by filing a complaint against Ivera on June 5, 2012. (Doc No. 4-1 at 1.) That complaint alleges, in relevant part, patent infringement, violations of 15 U.S.C. § 1125(a), and violations of Utah unfair competition law and common law unfair competition. (Id.) The parties later dismissed the unfair competition claims without prejudice. (Id. at 2-3.) The patent claim is still pending. (Id.; Doc. No. 6 at 7.) Because the non-patent claims have been dismissed in the 2012 case, the Court does not consider that case in its analysis of this motion. Instead, the Court focuses on the case filed in Utah on February 4, 2014.

infringement, violations of 15 U.S.C. § 1125(a), and violations of both Utah and California unfair competition law. (Doc. No. 4-1 at 3; see also Doc. No. 6 at 7 [describing the February Utah Case].) Catheter subsequently filed an amended complaint that included all of the same allegations. (Doc. No. 4-1 at 3.)

On February 4, 2014, Catheter filed a motion for a preliminary injunction. (Id.) The Utah court granted that motion on April 14, 2014. (Id.)

On June 6, 2014,[3] Catheter filed a second amended complaint for declaratory judgment that Catheter "has not violated Section 43(a) of the Lanham Act or any other state or federal statute regarding unfair competition, truth in advertising, or unfair trade practices, arising out of statements or publications concerning the Court's injunction and Ivera's ability to sell its products." (Id. at 4.)

On July 2, 2014, Catheter filed a third amended complaint "including *all* previous claims and allegations" and adding an additional claim. (Id. at 5.) On July 21, 2014, Ivera filed its answer to the third amended complaint and also asserted counterclaims, including claims under the Lanham Act. (Id.; Doc. No. 6 at 7.)

The Utah Court has already ruled on whether some of Catheter's claims under the Lanham Act are preempted. (Doc. No. 4-1 at 12.)

On August 28, 2014, Ivera moved for summary judgment in the February Utah case "with respect to all of the non-patent claims." (Doc. No. 6 at 8.) That motion is currently pending in Utah. (See id.)

## II. First to File Rule

Under the "first-to-file" rule, when cases involving the same parties and issues have been filed in two different districts, the second district court has discretion to transfer, stay, or dismiss the second case in the interest of efficiency and judicial economy. See Cedars-Sinai Medical Center v. Shalala, 125 F.3d 765,

---

[3] In its motion, Catheter says this that it filed the second amended complaint on June 6, 2012. (Doc. No. 4-1 at 4.) The Court assumes that Catheter meant that it filed the second amended complaint on June 6, 2014.

769 (9th Cir. 1997). "The first-to-file rule was developed to serve[] the purpose of promoting efficiency well and should not be disregarded lightly." Alltrade, Inc. v. Uniweld Products, Inc., 946 F.2d 622, 625 (9th Cir. 1991) (internal citations and quotations omitted). "While no precise rule has evolved, the general principle is to avoid duplicative litigation and to promote judicial efficiency." Barapind v. Reno, 225 F.3d 1100, 1109 (9th Cir. 2000) (internal quotations and citations omitted).

The first to file rule applies when "a similar complaint" has already been filed in another federal court. Alltrade, 946 F.2d at 623. The Alltrade court set forth three prerequisites for application of the first to file rule: (1) chronology of the two actions; (2) similarity of the parties; and (3) similarity of the issues. Id. at 625. The two actions do not need to be identical; they must only be "substantially similar." Inherent.com v. Martindale-Hubbell, 420 F.Supp.2d 1093, 1097 (N.D. Cal. 2006). "The first-to-file rule does not require strict identity of issues or 'exact parallelism,' but rather requires substantial similarity or overlap of the claims and issues." Youngevity Int'l, Inc. v. Renew Life Formulas, Inc., 14CV1605 AJB KSC, 2014 WL 4379099, at *4 (S.D. Cal. Aug. 13, 2014); see also PETA, Inc. v. Beyond the Frame, Ltd., CV 10-07576 MMM SSX, 2011 WL 686158, at *2 (C.D. Cal. Feb. 16, 2011) ("[T]he first-to-file rule does not require identical parties *or* issues, so long as the actions are substantially similar or involve substantial overlap.").

The first to file rule "is not a rigid or inflexible rule to be mechanically applied, but rather is to be applied with a view to the dictates of sound judicial administration." Pacesetter Sys., Inc. v. Medtronic, Inc., 678 F.2d 93, 95 (9th Cir. 1982); see also Alltrade, 946 F.2d at 627-28. A court "can, in the exercise of [its] discretion, dispense with the first-filed principle for reasons of equity." Alltrade, 946 F.2d at 628. "The circumstances under which an exception to the first-to-file rule typically will be made include bad faith, anticipatory suit, and forum shopping." Id. (internal citations omitted).

/ / /

**III.   Analysis**

This case was filed on August 26, 2014.  (Doc. No. 1.)  The still-pending February Utah Case was filed on February 4, 2014.  (Doc. No. 6 at 10.)  The parties are the same.  (Id.)  Accordingly, the critical issue is whether the claims and issues in the current case are substantially similar to the Utah case.  See Alltrade, 946 F.2d at 625 (first to file rule requires chronology of the two actions, similarity of the parties, and similarity of the issues).

Ivera contends that the cases are not substantially similar because the present case concerns only one discrete issue of false advertising while the February Utah case involves a multitude of claims, counterclaims, and defenses.  (See Doc. No. 6 at 10-12.)  Catheter disagrees, asserting that the claims in this case are "based on allegations, defenses, and counterclaims pled in the Utah Cases–all regarding representations about the features and alleged defects of each party's 'male cap' product."  (Doc. No. 7 at 1.)  The Court analyzes the claims in the present case to determine if they are substantially similar to the issues already being litigated between these parties in Utah.

In this case, Ivera brings three causes of action.  The first cause of action is for false advertising in violation of 15 U.S.C. § 1125(a).  (Doc. No. 1.)  Ivera contends that through its advertising, Catheter has "made both implied and express statements regarding the design and suitability of Ivera's products including, but not limited to, statements implying that Curos Tips leaks toxic amounts of IPA into patient IV lines, that Ivera's products are not sterilized, and that Ivera's products are pyrogenic."  (Doc. No. 1 at ¶84.)  Ivera asserts that these statements are "false and misleading" and that Catheter does not have evidence to support its claims regarding the Curos Tips.  (Id. at ¶85.)  In the February Utah case, Catheter brought a claim under the same provision of the Lanham Act, alleging, in relevant part, that Ivera has falsely represented that its products are as effective as Catheter's DualCap when "in fact, the Curos Tips leak toxic IPA into the infusion line" and that Ivera's

actions "mislead[] customers . . . into believing that they are getting a male cap from Ivera that functions like Catheter Connections' product, at a cheaper price." (Doc. No. 4-2 Item 1, col. 3 [citing Third Amended Complaint in February Utah Case].) Ivera also raises counterclaims in its answer to the third amended complaint including that Catheter made false statements regarding these products. (Id.)

Ivera also alleges in the first cause of action in the present that Catheter has made false statements regarding its own product, specifically alleging that Catheter's "DualCap does not disinfect all critical surfaces of a male luer connector to a degree required for classification by the FDA as a disinfectant device." (Doc. No. 1 at ¶83.) In the February Utah Case, Cather alleged that Ivera did not have FDA clearance for the product in question. (Doc. No. 4-2 Item 2, col. 3 [citing Third Amended Complaint in the February Utah case].)

To meet the requirements of the first to file rule, the claims do not to be identical, they need only be "substantially similar or involve substantial overlap." PETA, CV 10-07576 MMM SSX, 2011 WL 686158, at *2. Here, the respective operative complaints establish that Ivera's Lanham Act false advertising claims in the present case substantially overlap with the false advertising claims already being litigated between these parties in Utah.

Ivera's second cause of action in the present case for false advertising and third cause of action for unfair competition are based on the same factual allegations. (See Doc. No. 1 at ¶¶91-100.) To supports its claims under these causes of action, Ivera incorporates the allegations supporting its Lanham Act claim and additionally alleges that Catheter "makes representations concerning the effectiveness and safety of its products and compares its products to those of Ivera." (Doc. No. 1 at ¶92.) In the February Utah Case, Cather similarly alleged that "Ivera is representing to hospitals that its male cap performance is equivalent to Catheter Connections' male cap." (Doc. No. 4-2 Item 3, col. 3 [citing Third Amended Complaint in the February Utah Case].) The respective operative complaints

1  establish that the allegations underlying Ivera's second and third causes of action in
2  this case are already being litigated by these parties in Utah.  Therefore, the issues
3  are substantially similar and the first to file rule compels dismissal of the present
4  action.
5      Ivera maintains that this Court should not apply the first to file rule due to
6  equitable concerns, specifically for reasons of judicial administration and efficiency.
7  (Doc. No. 6 at 13-14.)  This argument is unavailing.  The Utah district court has
8  already taken substantial action in the February Utah case.  The Utah district court
9  has issued a preliminary injunction and has considered substantial preemption issues
10 regarding the Lanham Act claims.  Additionally, Ivera has already filed a motion for
11 summary judgment in that action.  Accordingly, allowing this action to run parallel
12 to the Utah action would defeat any concept of "sound judicial administration."[4]
13 Catheter also points out that "Ivera does not dispute that the claims brought by Ivera
14 in the California Case could have been asserted as counterclaims or affirmative
15 defenses in the first-filed Utah Cases." (Doc. No. 7 at 4.)  Accordingly, equitable
16 concerns do not warrant departure from the first to file rule.

### Conclusion

18 For the foregoing reasons, the Court grants Catheter's motion and dismisses
19 the action under the first to file rule.  The Court directs the clerk to close the case.
20 **IT IS SO ORDERED.**
21 DATED: October 8, 2014

23 MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT

---

[4] The issues here are different than when the Court considered a motion to dismiss under the first to file rule in 3:14-cv-1346-H-RBB. In that case, the Court had previously presided over substantial litigation between the parties that centered on the patent-in-suit in that case. By contrast, here, the Court has no prior experience with the current claims between these parties related to false advertising and unfair competition.